IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WADE MYERS,

        Plaintiff,

vs.                             No. CV 02-157 JP/ACT

WILLIAMS MANUFACTURING, INC.,
a Kansas corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER ON MOTIONS IN LIMINE**

        On October 20, 2003 Plaintiff Wade Myers ("Myers") filed a Motion in Limine to Exclude Opinion Testimony of Andrew LeCocq (Doc. No. 122). On October 28, 2003, Defendant Williams Manufacturing, Inc. ("Williams") filed two motions: (1) Defendant's Motion in Limine to Prohibit Mention of Evidence of Subsequent Remedial Measures (Doc. No. 126); and (2) Defendant's Motion in Limine to Exclude Evidence, Including Testimony Regarding the Value of Loss of Enjoyment of Life (Doc. No. 130). The Court has carefully reviewed the pleadings, the exhibits of record, the arguments of counsel, and the relevant law, and makes the following rulings on the motions.

        *Subsequent Remedial Measures.* Defendant Williams manufactured a tow rope that was used during an incident in which Plaintiff Wade Myers was injured. The tow rope had heavy metal D-rings at each end. One end of the tow rope was attached to a truck that had become stuck in mud, in an attempt to pull it out. The other end of the tow rope was attached to a loop of chain that was, in turn, attached to the towing vehicle. Plaintiff Myers was driving the truck

being towed, when the loop of chain detached from the metal D-ring on the end of the tow rope, causing the heavy metal ring to spring back towards the truck and hit Plaintiff's head. The chain itself did not break, but a pin that was used to secure the chain to itself, forming the loop that attached it to the tow rope, came loose.

Plaintiff has two alternative theories of liability that sound in negligence and strict product liability. The first theory is that Defendant Williams failed to attach a warning label to the tow rope. The second is that Williams attached an inadequate label that did not properly warn of the risk of injury posed by using a chain with the tow rope, and that failed to instruct how to safely use a chain with the tow rope.

The standard warning label attached to Williams' tow ropes at the time of the accident stated:

- CAUTION -
TOW ROPES CAN BE DANGEROUS.
USE WITH CARE!
1. When attaching this rope to a vehicle that is going to be pulled, or to a vehicle that is going to pull it, never attach the rope to a hook, clevis, chain, cable or other metal which object that is weaker than the rated strength of this rope as shown on the attached chart. To do so will create a dangerous condition in that even though the rope will not break, the hook, clevis, chain, cable or other metal object to which the rope is attached may tear from the vehicle with extreme force which might result in property damage, bodily injury or even death.

Def. Ex. A. After the accident involving Plaintiff Myers, the warning label attached to Williams' tow ropes was changed to read:

- CAUTION -
TOW ROPES CAN BE DANGEROUS.
USE WITH CARE!
NEVER ATTACH THIS ROPE TO A CHAIN!
1. When attaching this rope to a vehicle that is going to be pulled, or to a vehicle that is going to pull it, never attach the rope to a hook, clevis, cable or other metal

>which object that is weaker than the rated strength of this rope as shown on the attached chart. To do so will create a dangerous condition in that even though the rope will not break, the hook, clevis, cable or other metal object to which the rope is attached may tear from the vehicle with extreme force which might result in property damage, bodily injury or even death.

Def. Ex. B.

Defendant Williams argues that Plaintiff should not be allowed to inform the jury about the change made to its warning label because the rules of evidence do not allow admission in evidence of subsequent remedial measures to establish liability. Fed. R. Evid. 407 bars evidence of subsequent remedial measures to prove "negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." The state rule, N.M.R. Ann. 11-407, does not specifically apply to product liability cases, only to issues of "negligence or culpable conduct in connection with the event." However, there is no conflict between the federal and state rules because the New Mexico rule excluding evidence of subsequent remedial measures applies to product liability cases. Garcia v. Fleetwood Enterprises, Inc, 200 F.Supp. 2d 1302, 1305 (D.N.M. 2002).[1]

Both rules contain the same exceptions: "This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or impeachment." Plaintiff argues that evidence of the changed product label should be admissible for other purposes. He contends that it is admissible on the issue of whether the risk that a chain would detach in the

---

[1] The admissibility of subsequent remedial measures is a matter of state, not federal, law because the rule is designed to promote state policy in a substantive area. Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 932 (10th Cir. 1984); Garcia v. Fleetwood Enterprises, Inc, 200 F.Supp. 2d 1302, 1303 (D.N.M. 2002). If a conflict exists, the state rule applies. Moe, 727 F.2d at 932.

manner it did was foreseeable to Defendant Williams, or conversely on the issue of whether the risk was obvious to Plaintiff.  Both these issues impact whether Defendant Williams had a duty to warn of the specific risk encountered in the accident that occurred in this case and ultimately may impact Defendant Williams' liability.  Although these issues may be controverted, the fact that Williams changed its warning label does not tend to prove either foreseeability or obviousness of risk.  These are not the types of issues that are contemplated by the exception stated in the rule.  Plaintiff is really seeking to admit this evidence to establish Defendant's liability by proving the legal inadequacy of the original label.

Plaintiff next argues that this evidence is admissible to impeach Mr. Williams should he testify that Defendant Williams could not foresee the risk of injury of using a chain on its tow rope, and to impeach Mr. Williams if he testifies that the accident was the fault of those at the scene who attached the rope to the chain.  Evidence of the changed label is not properly used for impeachment of this sort.  To use evidence about the changed product label in this manner would negate the effect of  Rule 407.  *See* Garcia, 200 F.Supp. 2d at 1305 (*citing* Yardman v. San Juan Downs, Inc., 120 N.M. 751, 758, 906 P.2d 742, 749 (1995) and other cases).

Finally, Plaintiff asserts that the evidence is admissible to impeach the testimony of Defendant Williams' proffered expert witness, Andrew LeCocq, concerning the issue of the adequacy of the standard warning label.  As discussed below, Mr. LeCocq will not be allowed to testify as to the adequacy of the label, and in fact Mr. LeCocq may not be allowed to testify at all.  Thus, it is doubtful that evidence of the changed label will be allowed to impeach LeCocq's testimony.  The same concerns about the exception swallowing the rule apply to this use of the evidence of the changed label.

*Expert Testimony on Value of Loss of Enjoyment of Life.* Defendant argues that the expert opinion of Dr. Brian McDonald regarding the value of the Plaintiff's hedonic damages is inadmissible under Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and under Fed. R. Evid. 702, 403, and 703. Defendant asserts that Dr. McDonald's report contains a section entitled "Loss of Enjoyment of Life/Valuation of Life," and that testimony as to "the calculated value of hedonic damages or the value of the loss of enjoyment of life" should be excluded, as well as Dr. McDonald's "calculations on the value of life." Def. Brief at 1. "Defendant seeks to exclude testimony from Dr. McDonald of the statistical value of a hypothetical life and his valuation that Plaintiff has suffered a loss of $10,000.00 per year in purely hedonic damages." Id. at 2.

Plaintiff agrees that under Tenth Circuit precedent, Dr. McDonald cannot testify about his calculations on the value of the Plaintiff's life. Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1245 (10th Cir. 2000) ("Troubled by the disparity of results reached in published value-of-life studies and skeptical of their underlying methodology, the federal courts which have considered expert testimony on hedonic damages in the wake of Daubert have unanimously held quantifications of such damages inadmissible."). In Smith, however, the economist was allowed to testify as to the definition of loss of enjoyment of life and areas of human experience to be considered.

In McGuire v. City of Santa Fe, 954 F.Supp. 230 (D.N.M. 1996), the court excluded the testimony of an expert economist on hedonic damages in an employment discrimination case. The economist had interviewed the plaintiff to determine the extent of his lost enjoyment of life. He then came up with a dollar range for the value of the plaintiff's lost enjoyment of life by first calculating the economic value of a human's life using wage studies, then factoring in the

5

plaintiff's age and "risk aversion," and then multiplying the resulting figure by a percentage on a "Lost Pleasure of Life Scale" developed by a psychologist. Id. at 232. The court found this testimony did not meet the requirements of Daubert.[2]

Plaintiff argues, however, that excluding all Dr. McDonald's testimony on hedonic damages would be overbroad. He contends that under the reasoning of Couch v. Astec Industries, Inc., 132 N.M. 631, 2002-NMCA-084, *cert. denied*, No. 27,597 (2002), although Dr. McDonald cannot offer a specific value of Plaintiff's hedonic damages claim, Dr. McDonald may testify regarding "studies that have attempted to quantify the value of a 'statistical life.'" Couch, ¶18. The statistical life studies posit a range of values as well as the average value of a life "from cradle to grave and include[] earnings as well as intangible enjoyment." Id. The New Mexico Court of Appeals found that allowing this sort of expert testimony is in keeping with the Tenth Circuit's ruling in Smith because the expert witness does not attempt to apply the facts of the case to the proffered criteria and thus improperly intrude into the fact finder's domain. Id. at ¶20.

Although Couch is not binding authority, it is instructive and does not appear to be contrary to Tenth Circuit precedent. *See, e.g.,* Behler v. Hanlon, 199 F.R.D. 553, 555 n.1 (D.Md. 2001) (diversity cases governed by Federal Rules of Evidence and procedure, not state procedural rules or cases). In Smith, the Tenth Circuit noted that "New Mexico state law permits both the recovery of hedonic damages and allows an economist to testify regarding his or her opinion concerning the economic value of a plaintiff's loss of enjoyment of life." 214 F.3d at 1245-46. The court then stated: "The district court also made an appropriate decision regarding reliability,

---

[2] The court excluded testimony on the value of the plaintiff's loss of enjoyment of life on Daubert grounds, and because "hedonic damages are not a proper element of damages in an employment discrimination case." Id. at 234.

6

excluding the quantification which has troubled both courts and academics, but allowing an explanation adequate to insure the jury did not ignore a component of damages allowable under state law." Id.

The parties have not provided the Court with a copy of Dr. McDonald's report or with the specific testimony that is being challenged.[3] Dr. McDonald will not be allowed to testify as to "his valuation that Plaintiff has suffered a loss of $10,000.00 per year in purely hedonic damages." To that extent, Defendant's Motion in Limine will be granted. However, the Court is unable to properly perform its gatekeeping function under Rule 702 without the expert's report. Therefore, the Court will defer ruling on the admissibility of the remainder of Dr. McDonald's hedonic damages testimony until it has had an opportunity to review his report and consider oral argument of counsel. The Court will then determine whether Fed. R. Evid. 403 and 703 are appropriate bases for excluding Dr. McDonald's testimony on hedonic damages.

*Human Factors Expert.* Plaintiff argues that the expert opinions of Mr. Andrew LeCocq regarding the adequacy of the warning label on the tow rope, the compliance of the warning label with industry standards, the negligence of Plaintiff Myers, and the negligence of former Defendants is inadmissible under Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and under Fed. R. Evid. 702 and 403. In this case the Court has been provided a copy of Mr. LeCocq's report. After carefully considering the contents of the report, the qualifications of the expert witness, the Daubert factors, and Rules 402 and 403, the Court concludes that the bulk

---

[3] Defendant has provided a copy of a report by its own economist, Dr. George Rhodes, whose opinion is that an economist "does not bring reliable or valid scientific testimony or specialized knowledge to a trier of fact with respect to placing dollar values on human lives or on the enjoyment of human life. It is impossible for an economist to assign a dollar value to a human life or the enjoyment of it with validity or reliability." Def. Ex. A at 2. Dr. Rhodes attacks certain portions of Dr. McDonald's report, but without the report the Court cannot assess adequately the factors it must consider.

of the proposed testimony of Mr. LeCocq should not be admitted.

Mr. LeCocq is offered as a human factors expert. He has testified in other cases, and he has some expertise in the design of warning labels. However, his testimony would to a large degree invade the province of the jury without providing scientific or technical expertise that is helpful to the jury or beyond an ordinary juror's ken. Plaintiff's theory is that the contents of the warning label on the tow rope were inadequate because (1) the label didn't warn of the risk of using a chain with the tow rope, and (2) the label failed to instruct how to safely attach a strong-enough chain to the tow rope.

Mr. LeCocq's report completely ignores this theory of the case, and instead dispels possible criticisms of the label that are not at issue. For example, he opines that the label is adequate because it is of a durable material and firmly affixed to the tow rope. This is not disputed.[4] Also, he believes that the three human factors criteria that go into an adequate warning label are met because: (a) the label provides a description of the hazard (a metal object to which the rope is attached may tear from the vehicle); (b) it contains many precautionary statements; and (c) it contains a statement of the consequences of not following the warning, *i.e.*, "bodily injury or even death." The description of the hazard, however, is not what happened here. Rather than tearing from the tow vehicle, the metal object (the chain) detached from the tow rope, causing the end of the tow rope to strike the vehicle being pulled. Thus, this part of the opinion is not relevant. The jury can decide for itself if the failure of the label to warn of the specific hazard encountered in this case renders the label inadequate. Finally, Mr. LeCocq finds the use of large

---

[4] Plaintiff does contend that the tow rope was supplied "without a label with warnings or instructions for safe use." PTO § III(A) at 3. However Plaintiff does not contend that the tow rope label was defective because it was not durable or firmly attached.

letters in the label to draw attention to the danger statements helps draw attention to the importance of the warning.  This, too, is undisputed.

Likewise, the fact that the label warns that bodily injury or death can result from misuse of the tow rope is not contested.  The only relevant portion of the opinion is that the label contains precautionary statements, but again the Plaintiff's theory is that the label omits a precaution about using the tow rope with a chain of any strength because in this case the chain did not break, rather the method of fastening the chain to the tow rope proved faulty.  Whether the omission of this specific precautionary statement renders the label legally inadequate is a question for the jury and is not addressed by Mr. LeCocq's report.

Mr. LeCocq also opines that Plaintiff himself was negligent because he made the connections of the rope himself, including the connection of the chain to the towing vehicle (apparently the chain had been previously attached to the D-ring on the tow rope by Todd Poling), and because he knew that tow ropes can "come back like that" and "hurt you."  Also, Plaintiff did not read the warning label.  This opinion is not helpful because it is not based on any scientific or technical information that an ordinary juror does not possess.  Similarly, Mr. LeCocq offers "observations and comments" about the actions and omissions of the Polings, who are former Defendants.  In doing so, he simply points to deposition testimony of these persons to the effect that they did not notice, read and/or heed the warning on the label.

The only portion of Mr. LeCocq's report that approaches admissibility is the section on industry standards for the design of warnings.  These are put out by the American National Standard Institute, "ANSI Z535.4-1991 Product Safety Signs and Labels."  Mr. LeCocq proposes to testify that the label complied with these standards.  Plaintiff attacks these standards

9

as outdated because they were promulgated in 1991, and because the standards were developed by a committee with members from industry, labor, engineering, trade associations, the military and government agencies, without apparent input from judges or attorneys. The fact that the standards are industry standards rather than legal standards is not a ground for excluding testimony about their existence and contents. Additionally, the fact that the standards were developed in 1991 and may be outdated is not a reason to exclude the testimony about their contents and applicability to the label used in this case. These industry standards are not within the common knowledge of ordinary jurors, and so they may help the jury decide whether the label here was adequate.

Therefore, Mr. LeCocq may testify as to the pertinent parts of these standards, and the applicability of these standards to the label, but he may not testify as to whether the label complied with the standards. Alternatively, it hardly seems necessary to have an expert testify to such a limited matter, especially where the expert will not be allowed to testify as to his opinion. Therefore, if Plaintiff will stipulate to the admission of the pertinent portions of the standards used by Mr. LeCocq[5] (or a more current version, if available), and to their applicability to the label in this case, I will not allow Mr. LeCocq to testify at all.

THEREFORE IT IS ORDERED that Plaintiff's Motion in Limine to Exclude Opinion Testimony of Andrew LeCocq (Doc. No. 122) is hereby granted in part and denied in part as explained above.

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Prohibit Mention of

---

[5] A copy of portions of the standards is attached to the briefs and apparently was introduced at Mr. LeCocq's deposition, but the parties' exhibit lists do not include this as a proposed exhibit.

Evidence of Subsequent Remedial Measures (Doc. No. 126) is hereby granted.

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Exclude Evidence, Including Testimony Regarding the Value of Loss of Enjoyment of Life (Doc. No. 130) is granted in part, and ruling is deferred in part as explained above.

```
_____
UNITED STATES DISTRICT JUDGE
```